Mr. White? Correct, Your Honor. My name is Kyle White. I'm here with co-counsel Thomas Hagler and we represent the appellant, Tseng Zhong. Good morning. You may proceed. Thank you, Your Honors. Your Honors, may it please the Court, Ms. Brennan, distinguished among guests, an appellant's brief, Tseng Zhong, asserts that prior to and during his trial, his Fifth and Sixth Amendment rights were violated. It is appellant's contention that these constitutional infringements flow or emerge into each other. The end result is it denied him his right to a fair trial. However, I recognize that this Court has requested that we limit our arguments to those issues presented in sections two through five. In section two of appellant's brief, the appellant argues that direct questioning of appellant by the district court regarding his available defenses violated his Fifth Amendment right against self-incrimination that reached a level of prejudice that now requires a new trial. Prior to trial, the appellant's trial counsel failed to proffer a public authority defense. In fact, prior to trial on a number of occasions, the magistrate and district court judges had ordered that if the appellant was asserting a public authority defense, it was required to make a proffer consistent with Federal Rule of Criminal Procedure 12.3 to establish a prima facie case of public authority. On the first day of trial, the district court, after having extended the deadline on a number of occasions, reiterated the need for a proffer, specifically stating, I need a proffer. Then trial counsel states that he wants to call the appellant himself to make the proffer, while the trial judge says to this attorney, that's a little unusual. Then the court further stated, I was hoping that you would be prepared to do this today. The defense attorney continues with his statement that he, the appellant, will be making the proffer and testifying based on his belief that what he was doing was actually legal and within the laws of that same defense attorney is also stating there is no public authority. Seemingly exasperated, the court states to counsel, I need to know, sir, right now, whether you are asserting a public authority defense. Trial counsel permits his client, Sang Zhong, to engage in this colloquy between the court and his unprotected client, making the requested and ordered proffer, but through the defendant's own testimony. Jury not present. That's correct, your honor. None of this related to the jury, right? The jury was not present. The real problem is a proffer, right? Absence of a proffer. Correct. Thank you. But over the next six pages, your honor, the appellant is now being examined and questioned by the court without first having waived his right to remain silent. I know one of the assistant U.S. attorneys recognized the problem and stated very matter-of-factly, my concern here is with the defendant's Fifth Amendment right. I don't believe he's gone through the necessary steps to waive that right. The final question that I think is dispositive or critical is when the court's examining Mr. Zhong without a waiver of rights over those six transcript pages, she finally concluded with nobody from the U.S. government or the United States ever actually authorized a new Hmong country. Defendant answered, no, no, they never authorized. It's your job to fight for it. It didn't say you cannot or you can. Here, the error is prejudice. What's the error that you're alleging by the district court? I know you have complaints about the way the lawyer handled it, but setting that aside, what's the alleged error here by the district court? The more specific error, other than the Fifth Amendment violation, I mean, if you can imagine if the defendant was getting ready to testify and prior to the jury coming out did not have a proper waiver of rights, that would be a violation of the Fifth Amendment. And I think the assistant U.S. attorney recognized that and stopped the proceedings after six transcript pages where, in effect, he's waiving his available defenses by the court asking those specific questions. The court is actually engaging in the prosecutorial function of examining the appellant. Now, in Section 3, Your Honor, if I may, the appellant's brief... Just hold on. On that point, you're saying the district court erred by questioning him directly? Yes, Your Honor. Then, in falling into that same category of prejudice is the fact that the court is misapplying the law when it comes to whether he had an actual public authority defense. And specifically, the district court abuses discretion by an erroneous application of law pertaining to appellant's public authority-related defenses. As the honors are aware, there are three government authority defenses, public authority, entrapment by estoppel, and innocent intent. Appellant did not need actual authority to present an entrapment by estoppel defense, nor innocent intent. Entrapment by estoppel has been held to apply when official assures a defendant that certain conduct is legal and defendant reasonably relies on the advice and continues or initiates the conduct. The operative word there, I believe, is continues. And I would argue that the proffer that should have been made is that the right of return here for the Hmong people was something that they had been promised, that they would guarantee that if they were displaced, they could return to their homeland. Well, again, let me interrupt by saying, so what specific evidence of government authority were you present? Well, was your client prevented from presenting? He was barred from presenting any public authority defense. And because of the fact that the defense attorney was essentially stating on the eve of trial, we're not asserting any public authority defense and we're leaning toward innocent intent, there were no witnesses available. It was all going to be presented through hearsay evidence through the appellant himself. All right. Well, if that's what, if that was the defendant's position, then what was the district court's error? It seems like you're going back to arguing the lawyer was ineffective. I am, your honor, but the fifth amendment violation. I'll take that up on a collateral proceeding, but we're trying to focus on whether there's any error here by the district court. The district court in its memo correctly applied the law in terms of that the defense did not have to present evidence of public authority in regards to entrapment by estoppel or innocent intent. But when the court is applying that in the, in the, during the proffer by actually asking the question, what was the actual authorized public authority that is providing you evidence or you have evidence that there was a public authority actually authorizing a new country. I would have framed the argument, your honor, the question in terms of what the right of and his people, the Hmong had been promised that they would have a right of return to their homeland, which is guaranteed by international law. In fact, it dates back to the Magna Carta. There's articles in the United Nations articles of incorporation that state that individuals displaced refugees have a right of return. Then you have the sort of anecdotal stories and specific stories in regard to general Vang Pao being communicated by CIA officials, Colonel Bill Lair, and others that the Hmong would be taken care of. If in fact something went wrong, if they were displaced, they would be taken care of by the United States. They were simply trying to exercise the right of return. Since 1981, General Vang Pao continued to raise monies during that period of time till his death for a purpose of returning to the homeland, to the highlands. It's not a matter of creating a new Hmong country. It's the right of this particular Hmong community exercising their right to return based on the public authority of not only international law, but also the assertions of General Vang Pao and Colonel Bill Lair, as well as the fact that the continuing operation of raising funds was occurring from 1981 all the way through General Vang Pao's death in 2011. Then you have specific government officials that defense attorney did not call that were with the State Department, with the White House, with the United Nations that he had communicated with. And of course, none of this was introduced or provided because there was no proffer that was really made in terms of the public authority defense. So bottom line, your honors, if I may just sum up and reserve some time, the court, the presenting either entrapment by estoppel or innocent intent defenses was compounded by counsel's misunderstanding of these three related public authority, government authority defenses. By examining the defendant before he testified without the appropriate waiver of rights, by applying the requirement of actual authority and determining appellant's available defenses and hence limiting his testimony and witnesses that his counsel never called. In essence, presenting no defense now requires a new trial. If I may reserve the remaining time, your honors. You may. We'll hear from counsel for the government. Thank you, your honors. Good morning. May it please the court. We'll get to this in due time, but in light of our pre-argument instructions to both of you, both your client and Mr. Zahn's client, lawyers, what do you see that are the specific questions before us this morning? Your honor, I see the specific questions before the court. There are two questions related to whether the district court erred in its interpretation of law about what the defendant would have to show in order to assert a public authority defense and the way that information was communicated to the defendant. In other words, whether the district court erroneously precluded the defendant from raising innocent intent. And then the other issue, there's an argument that the sentence was substantively unreasonable. It was a guideline sentence that the district court imposed. And the other argument I think that the court and counsel were just focusing on is whether the district court violated the defendant's Fifth Amendment right by conducting this limited trial to determine whether he was going to assert a public authority defense. Very well, thank you. And so, your honors, I think one of the things to really look at at this point is what did the district court actually preclude the defendant from doing at trial? Because I think it is misstated in the appellant's brief. And at the end of this colloquy that happened, and sort of there was this discussion between the parties and the district court had issued an order prior to this colloquy sort of outlining the different showings that would need to be made for either a public authority defense, estoppel by entrapment, or innocent intent. The district court at the end of the colloquy simply prohibited the defendant's counsel from raising the public authority defense in cross-examination or opening statements. And the district court, this is at page 22 of the transcript, volume one, the district court said specifically, you are prohibited from raising the public authority defense. Now, the district court had already clearly informed the defendant, if it's innocent intent you're going to raise, there's no showing necessary. You can go ahead and argue innocent intent that you didn't mean to defraud anyone. The district court had also already set forth in that in order to, that the defense of estoppel by entrapment was a separate defense than public authority. So the district court was not conflating those terms. And in terms of, I'm sorry, it's entrapment by estoppel. Your honor, that was never raised by the defendant below. The defendant never, never indicated that he was going to claim that he was told by someone from the government that his conduct was legal, but that that person was mistaken and that the defendant erroneously relied on that information. So the only thing the district court said was, you can't, you can't indicate, you can't use questioning on cross-examination or in your opening statement indicia that you're asserting that you had public authority. And that's very specific. So if we move on from there, there was no objection at all during any part of the trial to any kind of evidence that the defendant wanted to put in related to his contacts with anyone, his advocacy work, his communications with world officials. There was at no point was there a time when there was evidence that was proffered by the defense where the court precluded that evidence from coming in. So to the extent the defendant is claiming that something happened during the trial that precluded him from asserting his defense, the defendant also, this related issue is whether his right to compulsory process was violated because he couldn't put in evidence that he wanted to put in essentially. But there was no, he never tried to put in evidence of public authority or estoppel by entrapment defenses during trial. There was no objection by the defense. There was no preclusion at all by the district court on that matter. In terms of, well, from what your opponent said, I don't know if you tried the case. I can't remember from the trial. I did try the case, your honor. The government itself somehow expressed some concern about the way, the manner in which the district court was raising these points. In other words, well to be frank, did it strike, well, I shouldn't ask you personally, but does it strike one as being a, did it strike us judges as being a bit somewhat unusual for the district court to raise this issue in the district court's own mind? Your honor, if you're referencing the proffer and the way that sort of came about prior to trial, that- The whole, well, I think the nature of the very fraud in this case sort of begged the question, is Mr. Zhang going to claim public authority? I mean, the allegations were that Mr. Zhang was telling his followers in the Hmong community that he was working with the CIA, with the United Nations, with the United States government, with the White House, and they had given him land in Southeast Asia that he was going to have this country, and he was selling memberships in it. So the question about, is he going to come in here and say, is he going to come into trial and say, yes, I'm working with so-and-so from the CIA or from the state department, and they've told me that this is what I'm getting, was a natural question to come up. And the defendant below never objected to the government's... The government requested an initial discovery that defendant provide a public authority notice if he was going to assert that defense. And then the magistrate ordered the defendant to provide that disclosure. It was never provided. So prior to trial, the government raised it again and asked the district court in a motion in limine to require the defendant to provide notice if he was going to use a public authority defense. At no time did the defendant object to the government's request that he provide that notice or say that that was inappropriate. In fact, the defendant seems to agree that he was required to give notice if he was going to assert a public authority defense, and it was proper for the district court to require him make some kind of a proffer prior to trial in order for him to do that. So really the only question is, was it improper for the court to directly question the defendant, I think? Well, first of all, your honor, the court does in limited circumstances question defendants and other witnesses from time to time. It's not uncommon in our practice for the court to initial appearances, sometimes at a detention hearing. And the court has recognized that that can be proper. In this case, the defendant asked the court to question him. In the defense counsel, for purposes of today's proceedings, the defendant and his counsel are one in the same. And this was the defense counsel inviting the court to question his client. Now, why the defense? What words did defense counsel use that you say inviting? The defense counsel... He didn't use the word invite. He didn't use the word invite. He said... What words? Do you know what the words were? He said, this is close, not verbatim, your honor. But he said, I think it would be useful for the court to ask Mr. Zhang directly. Mr. Zhang, will you please come up here to the podium? And the defense counsel did begin to proffer, though. He did have some information that he proffered to the court, but he didn't have all the necessary information that the court needed to determine whether there was going to be a public authority defense. There was certainly enough information out there for the court to conduct further inquiry. The defendant did list some names of people from the State Department and the United States Mission to the United Nations that he had spoken to. And so, for the court to want him to describe who are these people, and did they give you authority, was proper under Rule 12.3. And under the case law of the court. So, the fact that the defense counsel wanted his client to answer those questions directly from the court, we don't know why. We don't have a sufficient record to figure that out at this point. Was it because he wasn't able to get a straight answer from his client? Was it strategically because he wanted his client to sort of be able to refine his testimony and understand what was happening? We don't know. And the answers to those questions would be developed on a collateral proceeding, I take it? Yes, Your Honor. Yes, Your Honor. I'm sorry. No, that's fine. It was certainly unusual the way it occurred. What would be the usual way? Would it be a written notice, typically? So, Your Honor, there are two pieces. The written notice would be given under Rule 12.3, would list the names of the individuals that the defendant was claiming to have. The rule number is what? 12.3. And then, to follow up on that notice, then the court can require the defendant to make a prima facie showing in order to assert this defense. And that was what was happening. That's sort of the next step after the notice is provided. Now, that's not in the rule. Is that in the case law? That's not in the rule. That's in the case law. So, you're saying the court, before it allows the defense to proceed, can require a prima facie showing of some kind? That's right. And that's typically done outside the presence of the jury? That's correct, Your Honor. That's sort of an inquiry about, can you... It's a generous... Go ahead. It's a generous standard, basically, for the person to proffer, here's basically what I'm going to say. And if there's any scenario by which the jury could believe that the person was authorized, then they... The lawyer could say, we're going to call so-and-so from the State Department, or my client's going to testify that he talked to so-and-so from the State Department, and that could be sufficient to let the judge decide? Yes, Your Honor. Under the case law, at least the cases that I've reviewed... What's the best case... Yeah, go ahead. What's the best case that lays out what you think is the right procedure? Well, in the Eighth Circuit, it's the ACHTER case. Right. The... That's 52 F3rd 753. There's a couple of good cases cited in our brief. There's a... I believe it's a Seventh Circuit case that really describes, in a little bit more detail, sort of this process. Again, our case number... Our case was... The name of it is in your brief? Yes, it is. And again, what is it? I didn't quite hear. United States v. ACHTER. Oh, yes, it's here. Thank you. And then there's also United States v. Benning. I don't know how long you've been in your present position. Have you dealt with a case like this before? Your Honor, as far as I can tell, nobody's dealt with a case like this before, exactly. I've been on the court 33 years, and this might be the first one I've seen, but that's neither here nor there. In other words, it's not raised every... Not very often, I guess. It's not, Your Honor. I think the typical time that something like this would be raised, if somebody was making a drug sale, for example, and claimed to be a government informant. And so, clearly, they're doing something illegal, but the defense would be, the DEA was monitoring me and I was doing this under their authority. So, again, it was unusual, but the concern of the government, based on the defendant's conduct, was that he would be disclosing information and witnesses at trial that the government had no way to anticipate. So, the judge said, I'm not going to permit the public authority defense based on the information she got from the defendant, right? Well, she did, but, Your Honor, the defendant and his lawyer said that they weren't trying to claim a public authority defense. They went with just what they call the innocent intent defense. Right. And his defense was, how would you summarize how he argued the innocent intent defense? I would summarize his defense as, based on what I had learned from different advocates and different people throughout my career, I thought I was doing the right thing to get a country. His defense was, I thought I could do this and it was a legitimate fundraising effort... Basically. What I thought was a legitimate effort to get a country set up. Basically, Your Honor, that he didn't intend to mislead people into thinking that he actually had gotten a country, that he was trying to advocate, and that was based on conversations he had had with different individuals in government. Was he permitted to present that by way of a proposed jury instruction? Your Honor, he did not propose a jury instruction on that exact point. He did have an innocent intent instruction, I believe, but I'm not sure. The intent was an element of the offense, right? That's correct. And as the court explained in its order prior to trial, if he's trying to assert innocent intent, he doesn't need to make a showing of anything prior to trial. That just negates the mens rea. It's not a public authority defense. It just sort of sounds like one initially, but there was no requirements on him to assert that defense. And that's what he did assert throughout the trial, throughout the witnesses that were called on his behalf. Well, in the absence of further questions, we thank you for your argument. Thank you, Your Honor. Mr. White, you have rebuttal time. I'm not encouraging you to do this, but in lieu of the extra time we're giving the government, if you think you need it, you may proceed. Thank you, Your Honor. Right now you have five minutes and 17 seconds, not to put too fine a point on that. Just to follow up on a couple of points that regarding the public authority defense, obviously we're playing backseat driver here and looking at what occurred. I think this is an extremely unique case as Judge Wolman is suggesting. I mean, it's not a case where you have sheriff's deputies authorizing the use of a weapon. It's not a case where an individual defendant is impersonating a CIA officer or a colonel in the Air Force. It's not a case where an individual is simply relying on ATF forms or parole certificates. This is a case where if it had been briefed properly, it would have described the Hmong belief that they have a right of return to go back to Laos, to their homeland, not to create a new country, but to return to their homeland, to return to the highlands based on promises that were made to them by General Vang Pao, Colonel Bill Lair, CIA officials. But that's only half of it. The other half of it is that this is a tradition that is recognized in the Magna Carta. It's recognized in the United Nations articles. It's recognized in many treaties that the right of return is something that a displaced people have a right, especially these indigenous Hmong of Southeast Asia who have been persecuted and pushed around. And we're trying to help the United States fight communism. We've seen this in other situations where Cuban refugees went back to try to go back to Cuba in 1961. We've had many incidents of individuals trying to assert a public authority, but not in this instance where you're being prosecuted. Even General Vang Pao himself was indicted in federal court in Sacramento, and I believe it was 2007, in a case that had some similarities. The difference was that the similarities were that General Vang Pao was trying to raise an army and guns and money. He had a $28 million budget and was trying to return to the homeland, and the case was eventually dismissed. Saint John was trying to politically do something for the Hmong people, the Hmong people that wanted to return to their homeland. They felt they had a right to return, again, based on the promises by certain officials. He also talked to certain officials with the White House, the State Department, the United Nations. None of those people were called, and the first time I got involved with this case, I talked to a former law professor of constitutional law, and he said, that's a toxic case. You shouldn't be involved in it, and the reason I think in some respects it is is because there's so many different viewpoints. I was recently involved in the appointment of the first Hmong woman judge here in Minnesota, a tremendous honor for this young woman and for the Hmong community, and there are Hmong who have no interest whatsoever of returning to the homeland, none whatsoever. Many of the people that I think are here today would probably suggest we would like to return to the homeland. $1.3 million approximately are still in the coffers of the United States government, and many of the Hmong would probably say, take that money and don't return it to us, but use it for an appropriate effort to get back to Laos. The efforts that General Vang Pao made were since 1981 for approximately, I think it was 33 some odd years, he was raising money, $50,000, $60,000 per home, and individuals were providing that money with the hopes of returning to the homeland. The government has stated that there was something like 484 individuals who were victims of this particular crime, and yet at sentencing, only 31 were mentioned by a police officer who was part of the Vang clan, who stated those were the individuals that have extreme vulnerabilities. The sentencing here of 87 months, I think should be looked at. There should be no enhancements for this individual. He had an innocent intent. You didn't raise those to the reply brief, right? We raised the- I'm sorry, you didn't raise the enhancements to the reply brief, right? We raised the enhancement, the sentencing issues in the brief itself, Your Honor. Counsel, you did not raise the vulnerable victim enhancement to the reply brief, right? The reply brief, I believe we stayed with the primary issues of ineffective assistance of counsel and the Fifth Amendment violations. Proceed. And then just one last comment on the Fifth Amendment, right? No defendant should be compelled to incriminate himself or to waive his defenses. The defendant, Appellant Mr. Zhang, was questioned by the court. He was asked, what actually authorized you to create a new country? It framed the question improperly. It created a deposition for the government when he took the stand. It was a situation where he was forced to testify without properly being waived, waiving his right to testify or to assert his right to silence. Your Honor, I'd ask you to reverse this case. Well, we thank counsel for both sides for their briefs and their oral arguments. It's an interesting case. The court will take it under consideration and the case is now under submission.